UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARON RIVERS,

                              Plaintiff,

                                                                 DECISION AND ORDER

                                                                  06-CV-6391L

          v.

CITY OF ROCHESTER,

                              Defendant.
_____

## INTRODUCTION

    This Section 1983 case arose out of the forcible mental hygiene arrest of plaintiff by Rochester Police Department ("City") officers responding to multiple 9-1-1 calls for assistance by plaintiff at her residence, in the early morning hours of January 29, 2005. Plaintiff's claims against the City included false arrest, false imprisonment, and excessive force.

    On January 31, 2012, after an eight-day jury trial, the jury returned a verdict of "no cause" on all of plaintiff's claims. (Dkt. #104). Plaintiff now moves for a new trial pursuant to Fed. R. Civ. Proc. 59(a), on the grounds that: (1) the jury's "no cause" verdict was against the weight of the evidence; (2) the City mischaracterized the evidence in its summation; (3) the Court failed to properly charge the jury with regard to plaintiff's battery claim; and (4) the government improperly used one of its peremptory challenges to strike African-American and Hispanic potential jurors. (Dkt. #112). For the reasons that follow, plaintiff's motion is denied.

**DISCUSSION**

**I.   Weight of the Evidence**

Fed. R. Civ. Proc. 59(a) provides that, "[t]he Court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. Proc. 59(a). A trial court may grant such a motion to prevent a "miscarriage of justice" and grant a new trial if, in the court's opinion, the jury's verdict was against the weight of the evidence. *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983). In deciding whether a new trial should be granted, the court may weigh the evidence and assess "the verdict in the overall setting of trial." *Benevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978). Nonetheless, "it is still improper for the Court to grant a new trial when 'resolution of the issues depend[s] on assessment of the credibility of the witnesses,'" *Benson v. Yaeger*, 2010 U.S. Dist. LEXIS 122966 at *10 (W.D.N.Y. 2010), *quoting United States v. Landau*, 155 F.3d 93, 105 (2d Cir. 1998), and therefore a jury's credibility findings should be only "rarely disturb[ed]." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). *See also Sorlucco v. New York City Police Dep't*, 971 F.2d 864 (2d Cir. 1992).

Plaintiff argues that the jury's verdict in favor of the City was against the weight of the evidence, because the plaintiff submitted evidence of serious physical injuries to her wrists, and the City produced no "expert evidence" that the injuries were self-inflicted, rather than the cause of some improper conduct by the arresting officers. (Dkt. #112-2 at 2).

In so arguing, plaintiff appears to misapprehend her burden of proof in this case. The City was not required to "rebut" plaintiff's claims by proving that some other party, or some alternate instrument, caused plaintiff's alleged injuries. At all times, the ultimate burden of proof was upon plaintiff, to demonstrate that City police officers subjected her to unlawful force and/or battery, and that she was injured thereby. At trial, plaintiff contended that the handcuffs which were placed on her at the time of her arrest were overly constricting, and/or were not double-locked, which caused

them to tighten and injure her wrists as she was jostled thereafter. In contrast, the arresting officers testified that the handcuffs were placed on plaintiff in accordance with all applicable departmental policies, including double-locking and leaving a small, finger-width space between the individual's wrists and the inside of the handcuffs, and that they were not overly constricting. Evidence was also presented that plaintiff was combative and struggled against the handcuffs and other restraints, to the point that medical professionals later deemed it necessary to sedate plaintiff.

As such, there was ample evidence by which the jury could have concluded that the plaintiff's injuries were caused by her struggling against the handcuffs, and not by any improper or negligent handcuffing by the arresting officers. The jury was free to accept or reject the testimony of plaintiff, the arresting officers, and other witnesses as it saw fit, and to draw reasonable inferences therefrom. *See Benson*, 2010 U.S. Dist. LEXIS 122966 at *10. Furthermore, contrary to plaintiff's suggestion, the fact that someone might injure her own wrists by struggling against secured metal handcuffs is manifestly a subject within the practical knowledge of jurors, and no expert testimony was necessary to support a jury inference or finding to that effect. *See generally Bell v. Ercole*, 2011 U.S. Dist. LEXIS 122314 at *52 (E.D.N.Y. 2011) ("[b]ecause the subject matter is not beyond the ken of a typical juror, a jury of average intelligence could form a proper conclusion without the aid of an expert"), *aff'd*, 2012 U.S. App. LEXIS 5957 (2d Cir. 2012).

In light of these factors, the Court cannot conclude that the jury's verdict was against the weight of the evidence, or that it constituted a miscarriage of justice.

**II.   City Counsel's Summation**

Plaintiff also alleges that the City's counsel improperly referred to plaintiff's post-arrest conduct in arguing that her mental hygiene arrest was justified. Specifically, plaintiff suggests that by referring to evidence concerning plaintiff's erratic behavior *after* her mental hygiene arrest, counsel for the City may have confused the jury, which had previously been instructed that in order

for plaintiff's arrest to be lawful, the arresting officers had to have probable cause to arrest her, based on their knowledge of her conduct *at the time* of the arrest.

Upon plaintiff's objection, the Court ruled that counsel for the City's reference to evidence of plaintiff's post-arrest conduct was fair argument. The evidence served to refute plaintiff's contrary account of her demeanor during the time period in question, and supported counsel's suggestion that plaintiff's demeanor after her arrest did not arise spontaneously, but was reflective of a consistent pattern of bizarre and/or combative behavior by plaintiff during the morning in question. Counsel's argument was consistent with the testimony of witnesses who observed plaintiff at or after the time of her arrest, and at no time did counsel make any suggestion to the jury that any of plaintiff's post-arrest conduct could or did furnish probable cause for the prior arrest. As plaintiff concedes, the Court clearly and repeatedly "instructed the jury . . . that probable cause had to exist for the mental hygiene arrest at the time of the arrest," and there is simply no evidence that the jury failed to understand and/or to properly apply that charge. (Dkt. #112-1 at ¶¶47 - 49). *See generally Weeks v. Angelon* 528 U.S. 225, 234 (2000) ("[a] jury is presumed to follow its instructions"); *Ormerod v. County of Niagara*, 2010 U.S. Dist. LEXIS 85213 at *9 (W.D.N.Y. 2010) (same).

Plaintiff also objects to the City's having argued on summation that "[t]he hospital never found anything to warrant treatment for any of the [plaintiff's] alleged injuries." (Dkt. #112-1 at ¶56). While certain injuries were documented at some point during plaintiff's hospital stay by a social worker, testimony was offered establishing that no such injuries were documented by hospital staff when plaintiff was admitted, and that no treatment for any such injuries was provided by the hospital (Dkt. #112-1 at ¶¶59-60). The argument of the City's counsel was thus fairly based on the evidence presented at trial, and plaintiff's counsel had a full and fair opportunity to present any contrary evidence and arguments to the jury. I therefore find that counsel's summation was not improper.

**III.     The Jury Charge on Excessive Force**

Plaintiff further alleges that the Court improperly failed to charge the jury that if a lack of probable cause was found, then any force used to effect plaintiff's arrest was, as a matter of law, excessive. This issue is moot, in light of the jury's uncontested and evidence-supported finding that the arresting officers did, in fact, have probable cause to place plaintiff under a mental hygiene arrest on January 29, 2005. Because the jury found that there was probable cause, the particulars of any analysis that it would have had to undertake if it had found otherwise is wholly irrelevant.

**IV.     *Batson* Challenges**

Under *Batson v. Kentucky*, 476 U.S. 79 (1986), a party who believes he has been denied equal protection through his opponent's use of peremptory challenges may challenge the striking of a juror believed to be discriminatory. Analyzing a *Batson* claim requires a three step process. First, the movant must make out a *prima facie* case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Then, the burden shifts to the proponent of the strike to provide an adequate, race-neutral justification for the strike. If he does so, the trial court must then determine whether the movant has proved "purposeful racial discrimination." *Johnson v. California*, 545 U.S. 162, 168 (2005).

The fact that an individual is of minority heritage is not, by itself, sufficient to suggest a *Batson* violation. "Unless a discriminatory intent is inherent in the [party's] explanation, the reason offered is deemed race neutral." *Purkett v. Elen*, 514 U.S. 765, 768 (1995).

Here, the plaintiff objected to the City' striking of two prospective jurors, Mr. Campbell, who like plaintiff, was African-American, and Ms. Sanchez, whose ethnic background partially included Hispanic heritage. With regard to Ms. Sanchez, who was not of the same racial or ethnic background as plaintiff, the Court found that plaintiff had failed to make even a *prima facie* showing of discriminatory purpose, and plaintiff makes no effort to argue or establish that this ruling was improper.

With regard to Mr. Campbell, the City offered a race-neutral reason for the peremptory challenge, stating that Mr. Campbell's limited education might prevent him from understanding the complex medical evidence that were to be presented. The City noted that Mr. Campbell himself had expressed to the Court that he was concerned that the testimony would be difficult for him to understand. Plaintiff offers no evidence that the City's reason for the strike was pretextual, and her argument appears to be entirely speculative. As such, she has failed to meet her burden to show that City exercised any of its peremptory challenges in a discriminatory manner, or that the Court's rulings on its objections were erroneous.

I have considered plaintiff's remaining objections to the trial and verdict, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that the plaintiff was afforded a full and fair opportunity to prosecute her claims, and that the jury's verdict was not a miscarriage of justice or against the weight of the evidence Plaintiff's motion for a new trial pursuant to Fed. R. Civ. Proc. 59(a) (Dkt. #112) is denied in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 16, 2012.